UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| In re: | Case No. 3:13-bk-5792-JAF |
| BERRY & BERRY WINGS, LLC, | Chapter 11 |
| Debtor. | |
| _____/ | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came before the Court upon a confirmation hearing of Debtor's Second Amended Plan of Reorganization (the "Second Amended Plan") (Doc. 102) on October 2, 2014. Orange Bank of Florida appeared at the confirmation hearing and objected to the Second Amended Plan. In lieu of oral argument, the Court directed the parties to submit memoranda in support of their respective positions. Upon a review of the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

Debtor was formed as a limited liability company in 2006 and has operated as a Beef 'O' Brady's Family Sports Pub franchise since that date. Debtor was originally a partnership consisting of Tamara Berry, her husband, and his parents, although Mrs. Berry always held a majority ownership interest. As a result of several changes in ownership interests, Mrs. Berry is the sole owner of the equity interest in Debtor.

Debtor initially rented the building where the business operates. However, because of high rent, Debtor purchased the building (the "Real Property") in May, 2012. Debtor obtained the financing for the purchase of the Real Property through a United States Small Business Administration (the "SBA") program. Orange Bank of Florida

("Orange Bank") holds a first mortgage on the Real Property and a first priority lien on Debtor's personal property. The SBA holds a second mortgage on the Real Property and a second priority lien on Debtor's personal property.

During 2010 and 2011, Debtor paid its employees through an employee leasing company which paid Debtor's employees' withholding for federal income tax, Debtor's employees' withholding for Social Security and Medicare, and Debtor's federal unemployment tax. As such, for tax reporting purposes, Debtor did not have any employees and did not pay any wages. On Debtor's 2010 and 2011 partnership tax returns, Debtor's tax preparer mistakenly deducted Debtor's employees' salaries and wages on line 9, which permits a deduction for salaries and wages, rather than on line 20, which permits other deductions. As a result, it appeared that Debtor was required to file quarterly employment and unemployment tax returns and to deposit payroll taxes.

An Internal Revenue Service (the "IRS") agent appeared at the Real Property inquiring as to the discrepancy. Unaware that Debtor was not required to file quarterly employment tax returns, Mrs. Berry signed a series of 941s (Employer's Quarterly Federal Tax Returns) and 940s (Employer's Annual Federal Unemployment (FUTA) Tax Returns) prepared by the IRS agent. Shortly thereafter, the IRS began collection activities against Debtor. In reliance on the mistakenly signed form 941s and 940s, the Florida Department of Revenue (the "FDOR") made assessments for re-employment taxes (formerly unemployment taxes) and also began collection activities against Debtor. Debtor's bank accounts were levied.[1] As a result, Debtor defaulted on its obligation to Orange Bank. When the levies on Debtor's bank accounts were released, Debtor sent

---

[1] It is unclear whether the IRS or the FDOR levied on Debtor's bank accounts.

$10,000.00 to Orange Bank. After the payment, Debtor owed less than $3,000.00 in past due payments to Orange Bank. Shortly thereafter, Orange Bank filed a foreclosure complaint as to the Real Property.

On September 25, 2013, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. (Doc. 1). By Order dated November 26, 2013 (Doc. 29), Debtor was required to make monthly adequate protection payments to Orange Bank in the amount of $2,500.00 on the first day of each month, beginning on December 1, 2013. The December, 2013 adequate protection payment was made on January 14, 2014. (Debtor's Ex. 6). The January, 2014 adequate protection payment made on January 17, 2014 was declined for insufficient funds and was made again on January 30, 2014. (Id.) The February, 2014 and March, 2014 adequate protection payments were made on March 11, 2014. (Id.) Of the April, 2014 through October, 2014 adequate protection payments, none was made more than five days late. (Id.)

On April 1, 2014, Debtor filed a Disclosure Statement (Doc. 70) and a plan of reorganization which proposed to liquidate Debtor's assets by selling it as an ongoing business (Doc. 69) (the "Liquidating Plan"). On April 3, 2014, the Court entered Order Conditionally Approving the Disclosure Statement, Scheduling Hearing on Final Approval of Disclosure Statement and Confirmation of Plan or Reorganization, Fixing Time for Filing Fee and Other Administrative Expense Applications, Fixing Time for Filing Acceptances and Rejections of Plan, Deadline for Filing Claims, and Objections to the Disclosure Statement and to the Confirmation of the Plan (Doc. 72) (the "Order Conditionally Approving Disclosure Statement"). The Order Conditionally Approving Disclosure Statement set a hearing on May 14, 2014 for final approval of the Disclosure

Statement and confirmation of the Liquidating Plan and directed Debtor's attorney to mail a copy of the Liquidating Plan, the Disclosure Statement and a ballot for accepting or rejecting the plan to creditors, equity security holders, and other parties in interest. On April 10, 2014, Debtor's attorney mailed the documents as required by the order. Shortly thereafter, Mrs. Berry learned that the State of Florida Department of Transportation intended to condemn a portion of the Real Property in an eminent domain proceeding in order to widen a road. Once potential buyers were advised of the future eminent domain proceeding, interest in purchasing the business dwindled. After determining that the Liquidation Plan was not feasible, Debtor opted to reorganize and restructure its debts.

On May 14, 2014, the Court conducted the hearing on final approval of the Disclosure Statement and confirmation of the Liquidating Plan and continued those matters to July 28, 2014. By order dated May 15, 2014, the Court directed Debtor to file an amended plan within fourteen days. (Doc. 83).

On July 25, 2014, Debtor filed an amended plan (Doc. 91) (the "Amended Plan") and an amended disclosure statement (Doc. 92) (the "Amended Disclosure Statement"). On July 28, 2014, the Court conducted the continued hearing. Debtor's attorney informed the Court that Debtor had not timely filed an amended plan because it would not have been a feasible plan and that he believed Debtor had reached a possible agreement with the SBA. He urged the Court to continue the hearing to permit the creditors to review the Amended Plan. The Court continued the hearing to October 2, 2014.

On September 29, 2014, Debtor filed the Second Amended Plan. (Debtor's Ex. 1). The Second Amended Plan consists of the following classes of claims: 1) Class 1-

Orange Bank; 2) Class 2-the SBA; 3) Class 3-First Insurance Funding Corp.; 4) Class 4–General Unsecured Claims; and 5) Class 5-Equity Interests. The Second Amended Plan also includes the following unclassified priority claims: secured claims 4 and 5 of the Citrus County Tax Collector and secured claim 3-2 of the IRS. The Second Amended Plan anticipates administrative claims for legal fees in the amount of $20,000.00 and accounting fees in the amount of $2,000.00 as well as United States Trustee fees. The Second Amended Plan provides that the administrative expense claims will be paid in full on or before the effective date of the plan in cash or upon such terms as may be agreed upon by Debtor and the holder of the claim. Debtor's attorney has agreed to defer payment of his fees.[2]

The Second Amended Plan proposes to pay $2,900.00 per month to Orange Bank, $760.00 per month to the SBA, and $1,000.00 per month to the unclassified priority claimants for a total of $4,660.00 monthly.[3] The Second Amended Plan proposes to pay unsecured creditors $1,000.00 per month for 36 months beginning on the 47th month of the plan.[4]

Debtor projects monthly revenue of $72,000.00, which is based upon the average for the months of January through June of 2014. (Debtor's Ex. 2). However, that amount appears to be optimistic. Debtor's average monthly revenue for January, 2014 through

---

[2] Debtor's attorney has not yet filed a fee application.
[3] Claim 3-2 filed by the IRS is a secured claim in the amount of $36,679.22. According to Debtor, all but $2,063.27 of that amount represents payroll taxes resulting from the clerical errors on Debtor's 2010 and 2011 partnership tax returns. In its post-hearing memorandum, Debtor concedes that the $2,063.27 is a priority claim which must be paid with interest over 47 months and that the amount to be paid to priority claims will be $1,040.00 rather than $1,000.00 per month. It appears that amount will be closer to $1,045.00 per month resulting in a total monthly payment of approximately $4,705.00.
[4] On October 15, 2014, Debtor filed an Amendment to the Second Amended Plan to correct a clerical error with respect to the treatment of the general unsecured claims in Class 4 of the Second Amended Plan. The amendment provides that Class 4 general unsecured claims will receive distribution until all claims are satisfied.

October, 2014 is $70,736.25. (Debtor's Ex. 2; Docs. 95, 96, 116, 121). Mrs. Berry testified that a Panera Bread restaurant opened near Debtor in August, 2014 causing a temporary reduction in Debtor's revenues. Debtor projects monthly expenses of $68,600.00[5] which includes: 1) an approximate $2,916.00 expense for Mrs. Berry's salary and withholding taxes; and 2) a Chapter 11 plan payment of $4,410.00. Mrs. Berry testified that she would forgo her salary if necessary in order to make the plan payments.

## Conclusions of Law

Section 1129 of the Bankruptcy Code provides that a court shall confirm a Chapter 11 plan if it complies with each of the requirements set forth therein. Orange Bank asserts that the plan does not comply with §§ 1129(a)(1), 1129(a)(2), 1129(a)(4), 1129(a)(8), 1129(a)(10), and 1129(a)(11). The Court will address each section in turn.

### Section 1129(a)(1)

Section 1129(a)(1) requires that a plan comply with the applicable provisions of the Bankruptcy Code. Orange Bank argues that the plan fails to designate a class for secured claims 4 and 5 of the Citrus County Tax Collector and secured claim 3-2 of the Internal Revenue Service in contravention of § 1123(a)(1) of the Bankruptcy Code. Section 1123(a)(1) provides that "a plan shall-(1) designate, subject to section 1122 of this title, classes of claims, other than claims of a kind specified in section 507(a)(2), 507(a)(3), or 507(a)(8) of this title, and classes of interests;" 11 U.S.C. § 1123(a)(1). Section 507(a)(2) refers to administrative expense claims. Section 507(a)(3) refers to

---

[5] Debtor's Amended Disclosure Statement projected monthly expenses of $72,000.00. (Debtor's Ex. 2). However, Mrs. Berry testified that after the filing of the Amended Disclosure Statement, she eliminated a kitchen manager position which resulted in a reduction of $2,400.00 monthly in labor costs. Mrs. Berry also reduced Debtor's insurance costs by $1,000.00 monthly.

6

involuntary gap claims. Section 507(a)(8) refers to unsecured priority tax claims. The claims of the Citrus County Tax Collector and the IRS are secured tax claims. "While it is unsettled whether a secured tax claim may be classified for purposes of voting and cram down, the better reasoning suggests that a secured tax claim should not be treated as a 'class'". In re Mangia Pizza Invs., LP, 480 B.R. 669, 678 (Bankr. W.D. Tex. 2012), but see in re Lunde, 513 B.R. 587, 595 (Bankr. D. Col. 2014)(interpreting § 1123(a)(1) to require classification of all claims other than the three express exceptions); In re Greenwood Point, LP, 445 B.R. 885, 905 (Bankr. S.D. Ind. 2011) (same); In re EQK Bridgeview Plaza, Inc., 2011 WL 2458068, at *2 (Bankr. N.D. Tex. June 6, 2011) (same). Even if the Court had found otherwise, for purposes of efficiency and judicial economy, the Court would not deny confirmation on this basis in the instant case.

Orange Bank also argues that the Second Amended Plan contravenes § 1123(a)(5), which requires that a plan shall "provide adequate means for the plan's implementation[.]" 11 U.S.C. § 1123(a)(5). Orange Bank points out that on one hand the Second Amended Plan provides that "[t]he Debtor shall continue to operate its business [and] [r]evenues derived from business operations shall be used to fund the Plan," but on the other hand provides that "[Debtor]'s franchise agreement ... shall be deemed assumed upon confirmation of the plan and sold as an asset of the estate." Additionally, the Amended Disclosure Statement provides that "the plan does not contemplate the Debtor will continue its business operations after the confirmation of the plan." Orange Bank asserts that it is unclear whether Debtor will operate, not operate, or sell assets to unspecified buyers. Mrs. Berry's testimony and the Second Amended Plan make clear that Debtor will continue to operate. The language in the Second Amended Plan and

*Amended Disclosure Statement to the contrary appears to have been inadvertently left over from the Liquidation Plan and the Disclosure Statement.* The Court finds that the Second Amended Plan provides adequate means for its implementation.

### Section 1129(a)(2)

Section 1129(a)(2) provides that the Court shall confirm a plan only if the proponent of the plan complies with the applicable provisions of the Bankruptcy Code. Orange Bank argues that Debtor failed to comply with provisions of the Code related to adequate protection and cash collateral. Specifically, Orange Bank argues that Debtor: 1) used cash collateral in violation of the Bankruptcy Code and orders of the Court; 2) failed to timely file operating reports; 3) failed to timely make adequate protection payments; 4) permitted insurance to lapse; and 5) failed to timely file a plan by the deadline specified by the an order of the Court.

### I.     Adequate Protection and Cash Collateral Violations

"The legislative history of [§ 1129(a)(2)] indicates that Congress was primarily concerned 'that the proponent of the plan comply with the applicable provisions of [the Bankruptcy Code] such as section 1125 regarding disclosure'… Courts have split somewhat, however, on the range of other 'applicable' provisions. Some courts interpret 'applicable' to relate to all relevant provisions of [the Bankruptcy Code] to the plan proponent [such as] early violations of cash collateral orders … This … makes little sense, especially where the Code allows for remedies that more readily match the transgression." 3 Collier on Bankruptcy ¶ 1229.02[2] (4th ed. 2013). An interpretation that reads § 1129(a)(2) to refer to the provisions of the Bankruptcy Code related to

reorganization is more convincing. <u>Id.</u> Accordingly, the Court will not deny confirmation as to the purported adequate protection and cash collateral violations on the basis of § 1129(a)(2).[6]

## II. **Procedural Deficiencies**

Orange Bank also seeks to have the Court deny confirmation pursuant to § 1129(a)(2) on the basis of the following procedural violations: 1) Debtor solicited acceptance of the Amended Plan in advance of the Court's approval of the Amended Disclosure Statement; 2) Debtor failed to give the required notice to consider approval of the Amended Disclosure Statement and failed to serve notice of the October 2, 2014 hearing with the Amended Plan and Amended Disclosure Statement; and 3) Debtor failed to mail a copy of the Liquidating Plan, the Disclosure Statement and a ballot for accepting or rejecting the plan to all creditors and to certify such mailing as required by the Order Conditionally Approving Disclosure Statement. The Court will address each argument in turn.

### A. **Improper Solicitation**

Section 1125(b) provides that "[a]n acceptance or rejection of a plan may not be solicited ... unless, at the time of or before such solicitation, there is transmitted to such holder the plan... and a written disclosure statement approved after notice and a hearing...." 11 U.S.C. § 1125(b). Orange Bank points out that Debtor solicited acceptance of the Amended Plan in advance of the Court's approval of the Amended Disclosure statement, which occurred at the October 2, 2014 hearing. While a disclosure

---

[6] That having been said, pending before the Court are Motion by Orange Bank to Prohibit Use of Cash Collateral (Doc. 35) and Second Motion by Orange Bank to Dismiss or Convert Case (Doc. 88) (the "Motions") based upon the adequate protection and cash collateral violations as well as the other

statement should typically be approved before the plan proponent solicits votes for the plan, a harmless, premature solicitation is not necessarily fatal to the confirmation process. In re Cypresswood Land Partners, I, 409 B.R. 396, 424-25 (Bankr. S.D. Tex. 2009). In the instant case, the Court scheduled a simultaneous hearing on the approval of the Amended Disclosure Statement and the confirmation of the Amended Plan for reasons of judicial economy and efficiency. Such a procedure does not preclude confirmation under § 1129(a)(2).

### B. Inadequate Notice

Orange Bank points out that Debtor failed to give the required 28 days' notice[7] of the hearing to consider approval of the Amended Disclosure Statement and failed to serve notice of the October 2, 2014 hearing with the Amended Plan and Amended Disclosure Statement. Federal Rule of Bankruptcy Procedure 3017(a) provides that after the filing of a disclosure statement, "the court shall hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest.... The plan and the disclosure statement shall be mailed with the notice of hearing only to the debtor, any trustee or committee appointed under the Code, the Securities and Exchange Commission and any party in interest who requests in writing a copy of the statement or plan." On September 19, 2014, Debtor served notice that the Court would conduct the hearing on the Amended Disclosure Statement on October 2, 2014, thereby providing only thirteen days' notice of the hearing on the Amended Disclosure Statement. The Court finds that creditors and parties in interest had a meaningful opportunity to oppose (and Orange

---

enumerated violations. Even assuming the veracity of the allegations, the Court finds it appropriate to deny the Motions.

10

Bank did in fact oppose) the Amended Disclosure Statement. See In re El Comandante Mgmt. Co., LLC, 359 B.R. 410, 415 (Bankr. D. P.R. 2006) (finding meaningful opportunity to object to disclosure statement filed three days before hearing). As to Debtor's failure to serve notice with the Amended Plan and Amended Disclosure Statement, the Court notes that Debtor served notice of the Amended Plan and Amended Disclosure Statement on July 25, 2014.

### C. Failure to Comply with Order Conditionally Approving Disclosure Statement

Orange Bank alleges that Debtor failed to mail a copy of the Liquidating Plan, the Disclosure Statement and a ballot for accepting or rejecting the plan to all creditors and to certify such mailing as required by the Order Conditionally Approving Disclosure Statement dated April 3, 2014. While Debtor did not serve the documents within the three days required by the Order, Debtor did serve the documents on April 10, 2014. Debtor's failure to strictly comply with the Order does not warrant denial of confirmation.

### Section 1129(a)(4)

Orange Bank argues that administrative claims for legal and accounting fees, which are referred to in the disclosure statement, have not been approved and the plan therefore does not comply with § 1129(a)(4). That section provides that "any payment made ... by the debtor ... for services or for costs and expenses in or in connection with the case" must be approved by or subject to approval of the court as reasonable. 11

---

[7] Orange Bank actually asserts that 25 days' notice is required. Federal Rule of Bankruptcy Procedure 3017(a) previously required 25 days' notice but was amended in 2009 to implement changes in connection with Federal Rule of Bankruptcy Procedure 9006(a) by which all deadlines became multiples of seven days.

U.S.C. § 1129(a)(4). Debtor's attorney's fees and Debtor's accounting fees are subject to approval by the Court pursuant to 11 U.S.C. § 330. The plan does not run afoul of § 1129(a)(4).

### Section 1129(a)(10)

Section 1129(a)(10) provides that if there is an impaired class of claims under a plan, at least one impaired class must accept the plan. There are four impaired classes under the plan. Accordingly, at least one impaired class must accept the plan. Class 1, Orange Bank, and Class 4, the unsecured creditors, rejected the plan. Class 3, First Insurance, did not vote on the plan and is therefore deemed to have rejected the plan. Class 2, the SBA, voted to accept the plan on October 1, 2014. Orange Bank argues that because the SBA did not file its ballot at least fourteen (14) days before the confirmation hearing, the SBA did not cast a vote, the SBA is deemed to have rejected the plan, and there is no impaired accepting class. At the confirmation hearing, the Court granted Debtor's Motion to Allow the SBA's late filed ballot. Accordingly, at least one impaired class accepted the plan and the plan complies with § 1129(a)(10).

### Section 1129(a)(8)

Section 1129(a)(8) requires the acceptance of a Chapter 11 plan by each impaired class. Notwithstanding the rejection of the plan by an impaired class, the Court may confirm the plan if the plan "does not discriminate unfairly, and is fair and equitable," with respect to each non-accepting impaired class. 11 U.S.C. § 1129(b)(1). Class 3, First Insurance, is impaired and has not accepted the plan. However, by order dated October 17, 2014, the Court found that the treatment of Class 3 meets the requirements of §

1129(b). Classes 1 and 4 are impaired and have not accepted the plan. Accordingly, the plan does not comply with § 1129(a)(8).

### Section 1129(a)(11)[8]

In the Court's view, Orange Bank's only meaningful objection to confirmation is its argument that the plan is not feasible. Section 1129(a)(11), the "feasibility" requirement, mandates that the court confirm a plan only if "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor...." 11 U.S.C. § 1129(a)(11). Section 1129(a)(11) is designed "to prevent confirmation of 'visionary schemes' that promise a greater distribution than the debtor or plan proponent could ever attain." In re Bravo Enters. USA, LLC, 331 B.R. 459, 474 (Bankr. M.D. Fla. 2005). "The bankruptcy court is only required to find that a plan offers a reasonable probability of success, and a plan may be confirmable even if the debtor's projections are aggressive and do not view all business prospects in the worst possible light." In re F.G. Metals, Inc., 390 B.R. 467, 476 (Bankr. M.D. Fla. 2008) (citing In re T-H New Orleans Limited P'ship, 116 F.3d 790, 801-02 (5th Cir. 1997)). "The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds since a guarantee of the future is not required." In re Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 762 (Bankr. S.D. N.Y. 1992). In close cases, the better approach is to give the debtor an opportunity to demonstrate feasibility by performance. See In re Gelin, 437 B.R. 435, 438 n.9 (Bankr. M.D. Fla. 2010).

Debtor projects monthly revenue of $72,000.00, which is based upon the average for the months of January through June of 2014. However, as the Court noted, that

---

[8] Ordinarily, the Court does not make a determination as to feasibility until after the resolution of § 1129(b) motions. However, in the instant case, the feasibility determination can be made at this juncture.

amount appears to be optimistic because Debtor's average monthly revenue for January, 2014 through October 2014 is $70,736.25. Debtor projects monthly expenses of $68,600.00[9] which includes: 1) an approximate $2,916.00 expense for Mrs. Berry's salary and withholding taxes; and 2) a Chapter 11 plan payment of $4,410.00. Mrs. Berry testified that she would forgo her salary if necessary in order to make the plan payments.

As the Court previously noted, Debtor's plan payments will be approximately $4,705.00 per month. If Debtor's monthly revenue continues at its historical average and Debtor's monthly expenses do not exceed $68,600.00, Debtor will be left with $1,841.25 per month, not taking into account its payments to the United States Trustee. Additionally, the plan payment does not account for the payment of Debtor's attorney's fees. While the Court has some concerns about the feasibility of the plan, the Court finds that the plan has a reasonable probability of success and that Debtor should be given an opportunity to demonstrate feasibility by performance.[10]

## Conclusion

Debtor's Second Amended Plan complies with the requirements of 11 U.S.C. § 1129(a), with the exception of § 1129(a)(8). The Court will enter a separate order consistent with these Findings of Fact and Conclusions of Law.

**DATED** this 26 day of November, 2014 at Jacksonville, Florida.

JERRY A. FUNK
United States Bankruptcy Judge

---

[9] Debtor's disclosure statement projected monthly expenses of $72,000.00. However, Mrs. Berry testified that after the filing of the disclosure statement, she eliminated a kitchen manager position which resulted in a reduction of $2,400.00 monthly in labor costs. Mrs. Berry also reduced Debtor's insurance costs by $1,000.00 monthly.

[10] If the result of the § 1129(b) motions filed by Debtor affects the feasibility of the Second Amended Plan, the Court will revisit the issue at that time.